UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAMES RUSSELL,                              )   Case No. 11-CV-1656-W (JMA)
                                            )
                 Plaintiff,                 )   **REPORT AND**
                                            )   **RECOMMENDATION OF UNITED**
v.                                          )   **STATES MAGISTRATE JUDGE**
                                            )   **RE PLAINTIFF'S MOTION FOR**
MICHAEL J. ASTRUE,                          )   **SUMMARY JUDGMENT [DOC.**
Commissioner of Social Security,            )   **NO. 11] AND DEFENDANT'S**
                                            )   **CROSS-MOTION FOR**
                 Defendant.                 )   **SUMMARY JUDGMENT [DOC.**
                                            )   **NO. 12]**
_____            )

        Plaintiff James Russell ("Plaintiff") seeks judicial review of Defendant

Social Security Commissioner Michael J. Astrue's ("Defendant")

determination that he is not entitled to disability insurance benefits.  The

parties have filed cross-motions for summary judgment.  For the reasons

set forth below, the Court recommends that Plaintiff's motion for summary

judgment be **GRANTED**, that Defendant's cross-motion for summary

judgment be **DENIED**, and that the case be remanded for further

proceedings.

**I.  PROCEDURAL HISTORY**

        Plaintiff filed an application for disability insurance benefits on June

16, 2008 alleging a disability onset date of December 29, 2006 due to a

"broken back."  Admin. R. at 158-59, 182.  Plaintiff's disability claim was denied initially on September 17, 2008 and again upon reconsideration on December 3, 2008.  Id. at 90-94, 101-05.  On December 9, 2008, Plaintiff requested an administrative hearing.  Id. at 108.  A hearing was conducted on November 20, 2009 by Administrative Law Judge ("ALJ") Eve B. Godfrey, who determined on July 15, 2010 that Plaintiff was not disabled.  Id. at 12-23.  Plaintiff requested a review of the ALJ's decision; the Appeals Council for the Social Security Administration ("SSA") denied Plaintiff's request for review on May 27, 2011.  Id. at 1-6.  Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

## II.  FACTUAL BACKGROUND

Plaintiff was born on August 24, 1957 and completed twelfth grade.  Id. at 158, 186.  He worked as an operating engineer from 1987 to 2007.  Id. at 183.  He performed dredging on boats, which required pulling motors and cables as well as lifting and carrying drums and wire rope of fifty or more pounds frequently and one hundred or more pounds occasionally.  Id.  He injured his back at work on December 11, 2006 while lowering a barrel of line weighing approximately 150 pounds onto another vessel.  Id. at 282, 461.  Although he initially continued working after the accident, he stopped working on December 29, 2006 due to his injuries.  Id. at 182, 282.  Plaintiff is not married.  Id. at 158.

## III.  MEDICAL EVIDENCE

### A.    Tri-City Medical Center (December 2006)

On December 11, 2006 (the date of Plaintiff's work injury), Plaintiff was taken to Tri-City Medical Center via ambulance with a report that he had experienced a seizure while driving.  Id. at 419.  The emergency

department noted that Plaintiff had a history of seizures due to alcohol withdrawal, and that Plaintiff's past medical history was significant for alcoholism.  Id. at 419-20.  Plaintiff also complained of muscle pains and spasms across his back.  Id. at 419.

**B.     Jason A. Kouri, M.D., Treating Physician (December 2006)**

Plaintiff first visited Dr. Jason A. Kouri of U.S. Healthworks Medical Group on December 22, 2006, after being told by a chiropractor that he had a possible fracture in his back caused by his work injury.  Id. at 407.  Lumbosacral x-rays revealed a mild to moderate loss in height at L1 and L2 which suggested recent trauma.  Id. at 411.  Dr. Kouri diagnosed lumbar sprain and spondylolisthesis (the forward slippage of a segment of the spine),[1] placed Plaintiff on modified duty at work, and prescribed Motrin, lumbar support, and physical therapy.  Id. at 407, 410.  During a visit on December 29, 2006, Dr. Kouri noted that Plaintiff was still lifting more than five pounds at work.  Id. at 414.  Dr. Kouri recommended that Plaintiff limit his lifting to no more than five pounds and referred Plaintiff for a CT scan.  Id.  The CT scan, which was performed on January 3, 2007, showed mild compression fractures at L1 and L2 and multilevel spondylosis (degeneration of the disc spaces between the vertebrae)[2] at L4-L5 and L5-S1.  Id. at 264.

**C.     L. Mercer McKinley, M.D., Examining Physician (January 2007)**

On January 17, 2007, Dr. L. Mercer McKinley of Pacific Spine Clinic, Inc. conducted an orthopedic evaluation of Plaintiff at the request of AIG, his employer's insurance carrier.  Id. at 461.  Plaintiff reported stabbing and aching in the upper portion of his lumbar spine, but no pain radiating into

---

[1]See http://www.mayoclinic.com/health/back-surgery/HQ00305 (as visited Feb. 13, 2013).

[2]See http://www.medterms.com/script/main/art.asp?articlekey=13959 (as visited Feb. 13, 2013).

his lower extremities.  Id. at 462.  He also reported that he had been sent home by his employer because no suitable work was available for him.  Id. Dr. McKinley found that Plaintiff was temporarily totally disabled, and recommended physical therapy, Miacalium nasal spray to promote healing of the compression fractures at L1 and L2, and a MRI if symptoms continued.  Id. at 464.

**D.    Sidney H. Levine, M.D., Treating Physician (January-April 2007)**

Plaintiff first consulted with Dr. Sidney H. Levine, a board-certified orthopedic surgeon, on January 9, 2007.  Id. at 259, 261-63, 281.  Plaintiff reported a constant stabbing pain in his low back.  Id. at 282.  Dr. Levine diagnosed compression fractures at L1 and L2 and discogenic disease at L4-L5, and found that Plaintiff was temporarily totally disabled.  Id. at 286. Dr. Levine referred Plaintiff for a DEXA scan to determine if Plaintiff had osteoporosis, and recommended range of motion exercises and a return visit in two weeks.  Id.  Plaintiff was seen on January 23, 2007 and February 20, 2007.  Id. at 257-58, 260.

A lumbar MRI performed on March 29, 2007 showed acute to subacute fractures of L1 and L2 and some spondylosis at L4-L5 and L5-S1. Id. at 268.  Plaintiff's DEXA bone scan revealed mild osteopenia.  Id. at 270.  At a visit on April 5, 2007, Dr. Levine noted that Plaintiff had completed physical therapy and that a TENS (transcutaneous electrical nerve stimulation) unit had helped Plaintiff's symptoms, but that he continued to experience low back pain.  Id. at 258.

**E.    Michael P. Muldoon, M.D., Examining Physician (April 2007)**

On April 18, 2007, Dr. Michael P. Muldoon, an orthopedic surgeon, conducted a Long Shore and Harbor Medical Evaluation at the request of AIG.  Id. at 446.  Dr. Muldoon noted that Plaintiff's medications included Darvocet and Calcitonin, and that Plaintiff had consumed 6-12 beers per

day over the past thirty years. Id. at 447. Plaintiff reported non-radiating low back and mid-back pain rating six on a scale of ten, as well as neck pain that had been present since the time of his injury. Id. at 448. Upon physical examination, Dr. Muldoon found that Plaintiff's range of motion measured 60 degrees in flexion, 20 degrees in extension, lateral bend on the right 35 degrees, and lateral bend on the left 30 degrees. Id. at 450. Straight leg raising was negative. Id. Dr. Muldoon's diagnoses included compression fractures at L1 and L2, degenerative lumbar spondylosis, alcoholism, history of metabolic bone disease, and possible osteomalacia versus osteoporosis. Id. at 451. Dr. Muldoon opined that Plaintiff had two major risk factors for metabolic bone disease: his chronic alcoholism as well as a familial history of hypoparathyroidism or hypercalcemia. Id. He stated that this had resulted in a weakened bone and the natural progression of this condition would have resulted in disability even absent Plaintiff's work injury. Id. at 452. Dr. Muldoon recommended repeat visits to treating orthopedic surgeons and repeat radiographs to assess the progression of Plaintiff's spinal deformity, and that if increased kyphosis (forward rounding of upper back)[3] occurred, bracing and even surgery might be required. Id. He also recommended over-the-counter analgesics and anti-inflammatories, continued participation in an exercise program, and possibly an endocrinologic workup. Id. Finally, he stated that it was highly unlikely that Plaintiff would be able to return to his previous occupation. Id.

**F.     Sidney H. Levine, M.D., Treating Physician (June-September 2007)**

On June 11, 2007, Dr. Levine, Plaintiff's treating orthopedic surgeon,

---

[3]See http://www.mayoclinic.com/health/kyphosis/DS00681 (as visited Feb. 13, 2013).

responded to AIG's inquiry about whether he agreed with Dr. Muldoon's report. Id. at 288. Dr. Levine agreed with Dr. Muldoon's conclusions about Plaintiff's future medical treatment and his inability to return to his former work in an unrestricted manner. Id. at 290. However, Dr. Levine disagreed that Plaintiff's compression fractures were related to weakened bones due to Plaintiff's history of chronic alcohol use. Id. He observed that there was nothing in Plaintiff's DEXA scan that indicated Plaintiff had any predisposition to fractures, and that Plaintiff's mild osteopenia would not, in his opinion, result in compression fractures. Id. Dr. Levine stated that although Plaintiff could not return to his former work in an unrestricted manner, he could return to modified duties working on boats, if he could operate equipment and lift no more than 30-40 pounds. Id. at 289.

Plaintiff's condition remained the same in August and September 2007, with Dr. Levine noting a palpable muscle spasm in Plaintiff's lumbar area during that time. Id. at 292, 246-47, 251, 254-55. In November 2007, Dr. Levine found that Plaintiff's condition was permanent and stationary for rating purposes, and opined that Plaintiff was precluded from performing heavy work. Id. at 296-97. Plaintiff's range of motion in his back was forward flexion 45 degrees, extension 15 degrees, lateral bend 20 degrees, and rotation right and left 15 degrees. Id. at 295. Dr. Levine stated that Plaintiff's subjective low back complaints were intermittent and slight to moderate on occasion, progressing to moderate such that the pain could be tolerated but would cause a marked handicap in the performance of the activities precipitating the symptoms. Id. at 296. He also determined, while performing a representative job analysis, that Plaintiff could work an eight hour workday, lift up to thirty pounds, and perform a job requiring standing up to five hours per day and walking 1-2 hours per day on an intermittent basis, as long as he could stand for a maximum of fifteen minutes at a time

11cv1656

followed by a five-minute break from the activity.  Id. at 304, 306-07.

**G.    Kevin Yoo, M.D., Treating Physician (February 2008)[4]**

On February 27, 2008, Plaintiff presented to Dr. Kevin Yoo for a neurosurgical consultation.  Id. at 315-18.  Plaintiff rated his back pain as a seven on a scale of ten, reported that physical therapy, pain medication, and time had not eased his pain, and that he had also developed leg discomfort in the past few months.  Id. at 315.  Plaintiff related that he took 1-2 tablets of Darvocet per week and drank alcohol every day.  Id. at 316. Upon physical examination, Dr. Yoo found that Plaintiff had a limited range of motion in his back:  flexion 25% of normal, extension 10% of normal, and lateral bending 30% of normal.  Id.  Plaintiff's straight leg raise test was negative.  Id.  Dr. Yoo opined that Plaintiff was a good candidate for kypho- or vertebro-plasty if, upon MRI, the compression fractures were found to be active.  Id. at 317.  He also diagnosed possible lumbosacral radiculopathies.  Id.

**H.    Richard M. Thunder, M.D., Examining Physician (June 2008)**

Plaintiff appeared for an Independent Medical Examination with Dr. Richard M. Thunder of Torrey Pines Orthopaedic Medical Group on June 17, 2008.  Id. at 469-72.  Dr. Thunder opined that Plaintiff's pain was likely due to an underlying lumbar spondylosis coupled with the compression fracture resulting in a more forward flexed position, and that Plaintiff's occasional upper gluteal pain with some radiating symptoms was due to nerve root impingement at L4-L5 as seen on the MRI performed in 2007. Id. at 471.  Dr. Thunder concluded that surgery would not be beneficial in reducing Plaintiff's pain and that he should manage his symptoms with

---

[4]A treating physician is defined by the regulations as a medical source who has provided treatment or evaluation, so long as the relationship with the medical source is based on medical need for treatment or evaluation, rather than solely on a need to obtain a report in support of a claim for disability.  20 C.F.R. § 404.1502.

therapy and pain medication.  Id.  He recommended Plaintiff stay as active as he could and stated there was potential in the long run for his pain to improve.  Id.  He also stated that heavy construction work would no longer be a realistic occupation for Plaintiff.  Id.

**I.     Sidney H. Levine, M.D., Treating Physician (2008)**

During visits in January and April 2008, Plaintiff reported worsening back pain to Dr. Levine, as well as sleeping disturbances and difficulty getting out of bed.  Id. at 248-50, 320-21.  In August 2008, he complained of severe low back pain and pain in the right buttock and posterior thigh and calf, and stated he could no longer tolerate the pain and wished to proceed with surgery.  Id. at 321, 483.  On physical examination, Dr. Levine found marked tenderness in Plaintiff's lower lumbar area, marked limited range of motion in the back, and a positive straight leg raise test measuring 70 degrees on the right and 80 degrees on the left.  Id. at 321, 325.  A lumbar MRI performed the month prior upon Dr. Yoo's referral revealed a left paracentral disc protrusion at L5-S1 mildly impinging on the traversing left S1 nerve root, as well as the compression fractures at L1 and L2.  Id. at 321, 484-85.  Dr. Levine observed that he would normally recommend a L5-S1 lumbar laminectomy with diskectomy under such circumstances, but that Plaintiff could not obtain medical clearance for such a surgery due to a low blood platelet count, which would lead to bleeding during surgery.  Id. at 325; see also id. at 362 (progress note from Neighborhood Healthcare reflecting Plaintiff's lab results, noting that Plaintiff was down to ten beers per day from eighteen, and that Plaintiff could not have surgery until he discontinued his alcohol use and was medically cleared for surgery).

In December 2008, Dr. Levine completed a Lumbar Spine Residual Functional Capacity Questionnaire in which he stated that Plaintiff's prognosis was guarded, that Plaintiff had limited range of motion and a

11cv1656

positive straight leg raise test, that he could sit, stand, and walk for less than two hours out of an eight hour workday, and that he could lift less than ten pounds only rarely.  Id. at 391-93.

**J.      Thomas A. Schweller, M.D., Examining Physician (August 2008)**

On August 22, 2008, Plaintiff presented to Dr. Thomas A. Schweller for a neuro-orthopedic consultation at the request of the Department of Social Services.  Id. at 341-43.  Dr. Schweller noted that Plaintiff had some increased alcohol use in the past, but he was decreasing his use due to concern about his triglycerides.  Id. at 342.  On physical examination, Dr. Schweller noted that Plaintiff's range of motion in his back was flexion 30 degrees (normal 90 degrees), extension 5 degrees (normal 15 degrees), and right and left lateral bending each 20 degrees (normal 20 degrees), and found that straight leg raising on both the right and left were negative. Id. at 342.  Dr. Schweller diagnosed Plaintiff with a musculoligamentous sprain of the lumbar spine with lumbar disc disease.  Id. at 343.  He opined that Plaintiff could sit, stand, and walk for six hours out of an eight-hour workday, and could lift twenty pounds occasionally and ten pounds frequently.  Id.  Notably, Dr. Schweller's report provides no summary of Plaintiff's diagnostic tests (x-rays, CT scan, and MRIs) and no indication that he reviewed these materials.  Id. at 341-43.

**K.      Neighborhood Healthcare, Treating Psychologist (December 2008 - February 2009)**

On December 22, 2008, Plaintiff underwent an initial assessment with the behavioral health department at Neighborhood Healthcare.  Id. at 508-12.  He reported a depressed mood, sleep difficulties, decreased appetite, increased fatigue, and increased alcohol use as a means of numbing his pain.  Id. at 508.  He stated that he had reduced his alcohol consumption to ten beers per day due to the impact of alcohol on his blood work, and also

1  used marijuana a couple of time per week to deal with his pain.  <u>Id.</u> at 510.

2  Plaintiff was referred to a therapist for support and to decrease the

3  symptoms of his depression, and received psychiatric follow-up in January

4  and February 2009.  <u>Id.</u> at 512, 504-07.

5  **L.    Sidney H. Levine, M.D., Treating Physician (2009)**

6         Plaintiff saw Dr. Levine again on January 6, 2009.  <u>Id.</u> at 401, 474,

7  482.  Dr. Levine deemed Plaintiff's condition to be permanent and

8  stationary because he was not going to undergo the L5-S1 lumbar

9  laminectomy and fusion.  <u>Id.</u> at 398.  Dr. Levine explained that Plaintiff was

10 not a surgical candidate due to an underlying medical condition and

11 abnormal lab studies related to his alcoholism.  <u>Id.</u> at 402, 403.  Dr. Levine

12 stated that Plaintiff was not capable of gainful employment due to his

13 severe and unrelenting back pain associated with the severe disc

14 herniation at L5-S1.  <u>Id.</u> at 403.  He also opined that in order to avoid

15 further injury, he should be permitted to lie down for fifteen minutes every

16 hour.  <u>Id.</u>  Dr Levine noted that these restrictions were based upon

17 Plaintiff's persistent symptoms, abnormal MRI study, abnormal x-rays,

18 limited range of motion in the back, muscle spasm, and the L1 and L2

19 compression fractures.  <u>Id.</u>  On November 4, 2009, Dr. Levine prepared a

20 report stating that Plaintiff was unable to perform the job duties of an

21 operating engineer, was limited in his ability to stand and walk and could

22 only carry out these activities for a maximum of thirty minutes at a time,

23 would not be able to work more than four hours in an eight hour day, would

24 not be able to sit for more than a maximum of thirty minutes at a time, and

25 would be limited to lifting less than ten pounds frequently and ten pounds

26 occasionally with no repetitive lifting.  <u>Id.</u> at 514-17.

27 **M.    Ronald E. Feldman, M.D., Treating Physician (December 2009)**

28         On December 15, 2009, Plaintiff saw Dr. Ronald E. Feldman, a

gastroenterologist, for evaluation of a cystic pancreatic mass seen on a previous CT scan.  Id. at 521-22.  Dr. Feldman found no evidence that the cyst was infected or that it was causing pain.  Id. at 522.

## IV.  THE ADMINISTRATIVE HEARING

The ALJ conducted an administrative hearing on November 20, 2009. Id. at 28.

### A.  Plaintiff's Testimony

Plaintiff testified that he sustained two injuries at work – one on December 11, 2006, and another in late December 2006.  Id. at 33-34.  He stopped working around the first week of January 2007.  Id. at 34.  He had not had surgery as of the time of the hearing.  Id.  He testified he was aware that a pancreatic cyst had shown up on his MRI, and that he had had two bouts of pancreatitis in the past, but had not had it in the past three years.  Id. at 37-38.  Plaintiff stated that he had recently settled an injury case against his former employer and received $150,000.  Id. at 40.  He testified that he was still having back pain, but had decided not to have surgery because Dr. Levine told him his "red blood plates weren't strong enough to go to surgery" and Dr. Levine "didn't want to take the chance of me bleeding to death on the operating table."  Id. at 41, 43.

Plaintiff testified that he continued to take Darvocet once or twice per day as needed for pain.  Id. at 58.  He stated he had pain on a daily basis and that he felt as if his sciatic nerve was pinched.  Id.  He also stated that it was hard for him to get comfortable and he had to change positions often.  Id. at 58-59.  Dr. Yoo told him the MRI showed that he had protruding discs that were "smashed together" and pushing against his nerves, which was causing his leg problems.  Id. at 61.  He testified that he walked a half-mile every morning to exercise and to take his three dogs

11cv1656

out, and sat down once or twice during the walk.  Id.  He testified that he could stand three to four hours per day for a half-hour at a time.  Id. at 62. He stated that he worked on stained glass in his garage as a hobby for about four hours per day and alternated sitting and standing while doing so. Id. at 63.  He then took a break and watched TV until he felt better.  Id.  He stated he does not feel capable of standing for six hours out of an eight-hour workday, and tries to lift as little weight as possible.  Id.  He stated he was able to do the dishes and a little housework, but nothing "real heavy." Id. at 64.  He was able to lift a gallon of milk in each hand when grocery shopping.  Id.  He testified he would not be able to lift twenty pounds repetitively during the day.  Id. at 65.  He also stated that "some days are better than others . . . sometimes I feel really bad, but then sometimes I can actually get up out of bed without any problem."  Id. at 66.  Overall, his condition has stayed "about the same" and is not "getting any better," except since July 2008, it had maybe gotten "a little bit worse."  Id.  Plaintiff testified that he drank a six-pack of beer per day.  Id. at 69.  The doctor at Neighborhood Health Clinic told him to stop drinking to help his blood work. Id. at 70.

**B.   Medical Expert Testimony**

Medical expert ("ME") Donald I. Goldman, M.D. testified at the administrative hearing by telephone.  Id. at 28, 30, 45.  Dr. Goldman testified that Plaintiff did not meet Listing 1.04A or C because there was no evaluation showing an orthopedic issue causing impairment lasting twelve months or more.  Id. at 45.  Specifically, there was nothing demonstrating that Plaintiff's pain was not the result of pancreatitis, pancreatic cysts, or blood disorders, and no EMG (nerve conduction study) or clinical findings, such as atrophy, weakness, or reflex deficit, consistent with Plaintiff's MRI results.  Id. at 45-46.  The ME testified that "the point is, nobody knows

11cv1656

exactly which, whether it be medical or orthopedic, is causing this man's problem that would have continued to give him pain or an inability to function over a period of six months, five months, one/two/three years later." Id. at 47.  He further explained that "a positive MRI doesn't mean much" and that Dr. Levine's records did not document a positive straight leg raise, atrophy, weakness, or measurable loss of range of motion to support his conclusion regarding Plaintiff's limitations.  Id. at 51.  The ME testified he was unable to give an opinion as to Plaintiff's exertional abilities because he had nothing to base it on.  Id. at 53.  With respect to Dr. Levine's notes that Plaintiff had restriction of range of motion and spasm, the ME testified that Plaintiff had to have a better range of motion than Dr. Levine had indicated because Plaintiff was able to sit in a chair.  Id. at 53-54.  He also questioned whether anyone other than Dr. Levine, including Dr. Yoo, had documented atrophy weakness, a positive straight leg raise, or functional restrictions of motion.  Id. at 54.  In sum, the ME testified there was no correlation between Plaintiff's clinical findings and the findings on the MRI, a bone scan should have been performed to determine when the compression fracture occurred, and an EMG should have been performed. Id. at 55-56.

**C.   Vocational Expert Testimony**

Vocational expert ("VE") witness Gloria Lasoff testified at the administrative hearing.  Id. at 28, 74.  She characterized Plaintiff's past work as an operating engineer as skilled, heavy to very heavy work.  Id. at 75.  She testified that a person who had the restrictions set forth by Dr. Levine in December 2008 (id. at 391-93) would not be able to perform Plaintiff's past work.  Id. at 77-78.  Additionally, she testified that a person who would have to lie down every hour for fifteen minutes, as set forth by Dr. Levine in his January 2009 report (id. at 403), would not be able to

sustain work.  Id. at 81.  The VE testified that a person with the restrictions

set forth by Dr. Schweller (id. at 343) could not perform Plaintiff's past work

but could perform light work including as a garment folder, production

inspector, and assembler.  Id. at 82.

**D.    Amended Disability Onset Date**

At the administrative hearing, Plaintiff's attorney amended Plaintiff's

disability onset date to December 15, 2008.  Id. at 82-83.


**V.  THE ALJ DECISION**

After considering the record, ALJ Godfrey made the following

findings:

. . . .

2.    The claimant has not engaged in substantial gainful activity
      since December 15, 2008, the amended alleged onset date
      [citation omitted].

3.    The claimant has the following severe impairment:
      degenerative disc disease of the lumbar spine and a history of
      alcohol abuse [citation omitted].

. . . .

4.    The claimant does not have an impairment or
      combination of impairments that meets or medically
      equals one of the listed impairments in [the Social
      Security regulations].

. . . .

5.    After careful consideration of the entire record, the undersigned
      finds that the claimant has the residual functional capacity to
      perform light work due to degenerative disc disease of the
      lumbar spine with limitations to simple repetitive tasks due to
      alcohol abuse as defined in 20 C.F.R 404.1567(b).

. . . .

6.    The claimant is unable to perform any past relevant work
      [citation omitted].

. . . .

10.   Considering the claimant's age, education, work experience,
      and residual functional capacity, there are jobs that exist in
      significant numbers in the national economy that the claimant

11cv1656

can perform [citations omitted].

. . . .

11.   The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2008, through the date of this decision [citation omitted].

(Id. at 14-22.)

## VI. STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant must show that: (1) He or she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  See 42 U.S.C. § 423(d)(1)(A), (2)(A).  An applicant must meet both requirements to be "disabled."  Id.  Further, the applicant bears the burden of proving that he or she was either permanently disabled or subject to a condition which became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

## A.    Sequential Evaluation of Impairments

The Social Security Regulations outline a five-step process to determine whether an applicant is "disabled."  The five steps are as follows:  (1) Whether the claimant is presently working in any substantial gainful activity.  If so, the claimant is not disabled.  If not, the evaluation proceeds to step two.  (2) Whether the claimant's impairment is severe.  If not, the claimant is not disabled.  If so, the evaluation proceeds to step three.  (3) Whether the impairment meets or equals a specific impairment

11cv1656

listed in the Listing of Impairments.  If so, the claimant is disabled.  If not, the evaluation proceeds to step four.  (4) Whether the claimant is able to do any work he has done in the past.  If so, the claimant is not disabled.  If not, the evaluation continues to step five.  (5) Whether the claimant is able to do any other work.  If not, the claimant is disabled.  Conversely, if the Commissioner can establish there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled.  20 C.F.R. § 404.1520; see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

**B.    Judicial Review**

Sections 205(g) and 1631(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C.A. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Commissioner's final decision should not be disturbed unless:  (1) The ALJ's findings are based on legal error or (2) are not supported by substantial evidence in the record as a whole.  Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion.  See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Andrews, 53 F.3d at 1039).  Where the evidence is susceptible to more than one rational

11cv1656

interpretation, the ALJ's decision must be affirmed.  <u>Vasquez</u>, 572 F.3d at 591 (citation and quotations omitted).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may also be remanded to the SSA for further proceedings.  <u>Id.</u>

## VII.  DISCUSSION

Plaintiff contends the ALJ's decision to deny Plaintiff disability status was legally improper and was not supported by substantial evidence.  Plaintiff makes the following arguments:  First, the ALJ erred by failing to give controlling weight to Dr. Levine, Plaintiff's treating physician.  Pl.'s Mem. at 8-10.  Second, the ALJ erred by finding that Plaintiff's claims were not credible.  <u>Id.</u> at 10-13.

## A.    The ALJ Erred in Her Consideration of Dr. Levine's Opinion

Plaintiff argues the ALJ erred by not according controlling weight to Dr. Levine's opinions about Plaintiff's impairments.  <u>Id.</u> at 8-10.  Plaintiff contends that Dr. Levine's opinions were well-supported and not inconsistent with the other medical evidence in the record, and were thus entitled to greater weight than that provided by the ALJ.  <u>Id.</u>  Defendant counters that substantial evidence supports the ALJ's rejection of Dr. Levine's opinion.

Generally, a treating physician's opinion is given more weight by the SSA than a nontreating physician's opinion.  <u>See</u> 20 C.F.R. § 404.1527(c)(2) (2012).  A treating physician's opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  <u>Id.</u>  "Controlling weight" is

defined as a medical opinion from a treating source that must be adopted. SSR 96-2P, 1996 WL 374188 (1996), at *1.  If a treating physician's opinion is not given "controlling weight," the SSA applies the factors it applies to all medical opinions to determine the weight to give to the opinion.  20 C.F.R. § 404.1527(c)(2).[5]  A finding that a treating source medical opinion should not be accorded "controlling weight" does not mean that the opinion is rejected.  Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007); SSR 96-2P, 1996 WL 374188, at *1.  "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  Orn, 495 F.3d at 632.

If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject the opinion only by articulating "clear and convincing" reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating physician's opinion is contradicted by another doctor, the ALJ may reject the opinion of the treating physician only by giving "specific and legitimate" reasons for doing so that are based on substantial evidence in the record. Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physicians are not "substantial evidence."  Orn, 495 F.3d at 632. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'"  Id.  Independent clinical findings can consist of

---

[5]20 C.F.R. § 404.1527 was amended on three occasions following the ALJ's 2010 decision.  However, as there was no substantive change regarding the factors to consider in the weighing of medical opinions, the Court refers to the newest version of the regulation for ease of reference.

1  either (1) diagnoses that differ from those provided by another physician

2  and that are supported by substantial evidence or (2) findings based on

3  objective medical tests that the treating doctor has not considered.  Id.

4  (citing Andrews, 53 F.3d at 1041).

5      Here, the ALJ did not give controlling weight to Dr. Levine's opinion

6  for the following reasons:

7      First, with regard to the Form Listing 1.04A - Spinal Nerve Root
   Compression [Admin. R. at 389-90], Dr. Levine does not
8  provide objective medical evidence.  In fact, Dr. Levine reported
   that relative to the future need for medical treatment to the low
9  back should be conservative.  Moreover, the claimant is not a
   surgical candidate due to abnormal laboratory studies
10  secondary to a history of alcoholism [exhibit reference omitted].
   The extremely limited residual functional capacity seems to be
11  contradicted by his own reports, as well as the opinion of
   examining physician Dr. [Schweller][6] [exhibit references
12  omitted].  Second, when one views the objective medical
   evidence of record, it . . . becomes clear that Dr. Levine's
13  opinion of the claimant's limitations is a conclusion based solely
   upon the claimant's subjective complaints, as opposed to the
14  objective evidence.  There are no objective medical findings to
   support his opinions, including his own reports.  Third, Dr.
15  Levine's opinions are not well supported; the limitations are not
   backed by citations to medical signs and laboratory results as
16  required by SSR-96-4P.  Dr. Levine's opinions are inconsistent
   with [the] totality of the evidence, including the claimant's
17  acknowledged activities and the opinions of Dr. [Schweller]
   [exhibit reference omitted], Dr. Goldman, the medical expert
18  and board-certified orthopedic surgeon, and the State agency
   physicians.

19  Admin. R. at 18.  The ALJ then rejected Dr. Levine's opinions as follows:

20      [T]he undersigned finds Dr. Levine's opinions are neither
   persuasive nor controlling and is not supported by the other
21  evidence of record, including the records of the claimant's
   consulting and examining sources.  Since Dr. Levine's opinion
22  is not well supported by medically acceptable clinical and
   laboratory diagnostic techniques and is not deserving of the
23  great weight generally accorded to the opinions of a treating
   physician, it is rejected (20 C.F.R. § 404.1527(d)(2)).
24

25

26  Admin. R. at 18.

27
   _____

28      [6]The ALJ erroneously refers throughout her decision to "Dr. Sabourin" as
   the examining SSA physician rather than to Dr. Schweller.  See, e.g., Admin. R.
   at 15-16, 18-19.

11cv1656

1   The Court finds that the ALJ did not give Dr. Levine's opinion the
2   deference it deserved.  The factors set forth in 20 C.F.R. § 404.1527(c)
3   increase the weight that should have been afforded to Dr. Levine's
4   opinions.  Dr. Levine was Plaintiff's treating physician over the course of
5   three years, from shortly after his work injury until at least the time of the
6   administrative hearing, and he therefore "obtained a longitudinal picture" of
7   Plaintiff's impairment that the examining and nonexamining physicians did
8   not possess.  20 C.F.R. § 404.1527(c)(i).  Dr. Levine, a board-certified
9   orthopedic surgeon, had "reasonable knowledge" of Plaintiff's lumbar spine
10  complaints as contemplated by § 404.1527(c)(ii) as well as the
11  "specialization" discussed in § 404.1527(c)(3)(5).  The "supportability" of
12  Dr. Levine's opinions lends further weight to his opinions.  Contrary to the
13  ALJ's conclusions, the record contains ample diagnostic and clinical
14  findings to support Dr. Levine's opinions, including the December 2006
15  lumbar x-rays (Admin. R. at 411), January 2007 lumbar CT scan (id. at
16  264-65), March 2007 lumbar MRI (id. at 268-69), July 2008 lumbar MRI (id.
17  at 484-85), and limited range of motion findings, which were corroborated
18  by Dr. Yoo, a treating physician (id. at 316) and Dr. Schweller, the SSA
19  examining physician (id. at 342).  The "consistency" of Dr. Levine's
20  opinions with the record as a whole merits additional weight being placed
21  on his opinions.  Dr. Levine's diagnoses of back pain and radicular
22  symptoms caused by compression fractures at L1 and L2 and spondylosis
23  at L4-L5 and L5-S1 with nerve impingement are consistent with the
24  diagnoses rendered by Dr. Yoo, Dr. Thunder, and, to a certain extent, Dr.
25  Muldoon.  See id. at 317, 471, 451.  Only Dr. Schweller, the physician who
26  examined Plaintiff at the behest of the SSA and who, notably, failed to
27  mention any of Plaintiff's objective diagnostic findings, provided a less
28  significant diagnosis:  lumbar sprain with lumbar disc disease.  Id. at 343.

11cv1656

1   In sum, an analysis of the factors set forth in § 404.1527 shows that Dr.

2   Levine's opinions should have been accorded greater weight than that

3   accorded by the ALJ.

4        As Dr. Levine's opinion was contradicted by other medical opinions in

5   the record, in order to reject Dr. Levine's opinion, the ALJ was required to

6   articulate "specific and legitimate" reasons for doing so based on

7   substantial evidence in the record.  Lester, 81 F.3d at 830-31.  The ALJ

8   failed to do so.  Dr. Levine's determination that Plaintiff was not a surgical

9   candidate was not based upon a lack of the need for surgery but rather

10  Plaintiff's inability to have surgery due to the effect of his alcohol

11  consumption on his laboratory findings.  Thus, the ALJ's statement that

12  Plaintiff's condition warranted only "conservative" treatment is misleading,

13  and did not constitute a specific and legitimate reason to reject Dr. Levine's

14  opinion regarding the effect of Plaintiff's impairments.  Dr. Schweller

15  rendered his opinion without considering any of Plaintiff's positive

16  diagnostic findings, and thus his opinion does not constitute "substantial

17  evidence" that could be relied upon by the ALJ to reject Dr. Levine's

18  opinion.  See Andrews, 53 F.3d at 1039 (defining "substantial evidence" as

19  "such relevant evidence as a reasonable mind might accept as adequate to

20  support a conclusion").  As discussed in the preceding paragraph, there

21  was ample objective evidence to support Dr. Levine's opinions, and thus

22  the ALJ's determination that no objective findings supported his opinions

23  was not legitimate.  The ALJ's finding that Dr. Levine's opinion was

24  inconsistent with the totality of the record was also not a legitimate reason

25  to reject his opinion.  As discussed above, Dr. Levine's diagnoses were

26  wholly consistent with the other opinions in the medical record, save one —

27  that of Dr. Schweller—whose own opinion was not supported by and did

28  not constitute substantial evidence.

11cv1656

1    The ALJ also found that the extremely limited residual functional

2   capacity provided by Dr. Levine for Plaintiff was contradicted by Plaintiff's

3   own acknowledged activities.  Admin. R. at 18.  Presumably, the ALJ was

4   referring to Plaintiff's testimony that he worked on stained glass in his

5   garage as a hobby for approximately four hours per day and alternated

6   sitting and standing while doing so.  Id. at 63; compare with id. at 393 (Dr.

7   Levine's December 2008 opinion that Plaintiff could sit, stand, and walk for

8   less than two hours per day).  However, Dr. Levine later amended his

9   opinion regarding Plaintiff's residual functional capacity and stated that

10   while Plaintiff could work for four hours in an eight-hour day, he could sit,

11   stand, and walk for only thirty minutes at a time.  Id. at 517.  Plaintiff's

12   testimony does not contradict this opinion.

13    Although, as observed by the ALJ, the ME, Dr. Goldman, expressed

14   concerns about Dr. Levine's findings, the Court questions the legitimacy of

15   the ME's opinions.  The ME testified that Plaintiff should have had a bone

16   scan performed to determine when the compression fracture occurred (id.

17   at 55-56), apparently ignoring that a bone scan *was* performed in March

18   2007 (see id. at 270) and that both x-rays and a CT scan taken in the days

19   and weeks following his work injury revealed that Plaintiff's compression

20   fractures were due to "recent trauma" and were "acute or subacute in

21   chronicity" (id. at 411, 264).  Moreover, the ME's disregard of Dr. Levine's

22   findings appeared to be based in part upon his own supposition that

23   Plaintiff's symptoms were being caused by pancreatitis or a pancreatic cyst

24   (id. at 45-46), an opinion discounted by Dr. Feldman's post-hearing (but

25   pre-ALJ decision) finding that it was not likely that Plaintiff's back pain was

26   being caused by Plaintiff's pancreatic pseudocyst (id. at 521-22).  Finally,

27   the ME's insistence that Dr. Levine's reports lacked, among other things, a

28   measurable loss of range of motion to support his conclusion regarding

11cv1656

Plaintiff's limitations (<u>see</u> <u>id.</u> at 51) is simply not supported by the record. Dr. Levine's finding that Plaintiff had a limited range of motion in his back was corroborated by Dr. Yoo, a treating physician, and even the SSA examiner, Dr. Schweller.  <u>See</u> <u>id.</u> at 316, 342.

Treating source medical opinions, irrespective of whether they are entitled to controlling weight, are entitled to deference and must be weighed in accordance with the factors provided in 20 C.F.R. § 404.1527. <u>Orn</u>, 495 F.3d at 632.  Applying these factors, Dr. Levine's opinion is entitled to great weight, and the ALJ committed error by not affording his opinion the deference it deserved.  Additionally, the ALJ failed to articulate "specific and legitimate" reasons based on substantial evidence in the record to reject Dr. Levine's opinion, also constituting legal error.  <u>See</u> <u>Lester</u>, 81 F.3d at 830-31.  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded."  <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).  The Court recommends that the ALJ, upon remand, be required to provide due consideration to Dr. Levine's opinion and findings.

**B.    Plaintiff's Credibility Should be Reconsidered Upon Remand**

Plaintiff argues that the ALJ erred in finding that Plaintiff's claims about his diminished residual functional capacity were not fully credible. Pl.'s Mem. at 10-13.  In determining a claimant's residual functional capacity, the ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  <u>See</u> <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006) (citing SSR 96-8p, 1996 WL 374184, at *5).  "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions

1    than can be shown by objective medical evidence alone."  SSR 96-8p,

2    1996 WL 374184, at *5.  When considering a claimant's subjective

3    symptom testimony, "if the record establishes the existence of a medically

4    determinable impairment that could reasonably give rise to the reported

5    symptoms, an ALJ must make a finding as to the credibility of the

6    claimant's statements about the symptoms and their functional effect."

7    Robbins, 466 F.3d at 883 (9th Cir. 2006) (citations omitted).  "While an ALJ

8    may find testimony not credible in part or in whole, he or she may not

9    disregard it solely because it is not substantiated affirmatively by objective

10   evidence."  Id.  Rather, an ALJ may only find a claimant not credible by

11   making specific findings as to credibility and stating clear and convincing

12   reasons to discount the claimant's subjective symptom testimony.  Id.; see

13   also Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

14          Here, the ALJ stated the following regarding Plaintiff's credibility:

15          After careful consideration of the evidence, the undersigned
            finds that the claimant's medically determinable impairments
16          could reasonably be expected to cause the alleged symptoms;
            however, the claimant's statements concerning the intensity,
17          persistence and limiting effects of these symptoms are not
            credible to the extent they are inconsistent with the above
18          residual functional capacity assessment [finding that Plaintiff
            could perform light work with limitations to simple repetitive
19          tasks].

20          [1] In terms of the claimant's alleged disabling impairments, the
            record fails to document any objective clinical findings
21          establishing that the claimant was not able to perform work in
            light of the reports of the treating and examining practitioners
22          and the findings made on examination.

23          [2] The claimant's pain and limitations are not fully corroborated
            by objective medical evidence.  There is no physiological basis
24          for the intensity of his complaints.

25          [3] The claimant has not undergone any intensive pain regimen
            or therapy which would have precluded him from performing
26          activities at the above exertional level on a sustained basis for
            a period of 12 or more continuous months.

27
            [4] The claimant has not generally received the type of medical
28          treatment one would expect for a totally disabled individual.
            The claimant's course of treatment has generally reflected a

conservative approach.

[5] The record reflects significant gaps in treatment, further indicating that the claimant's symptoms and limitations have not been as serious as has been alleged in connection with this application and appeal.

[6] On December 11, 2006, the claimant was seen in the emergency room at Tri City Medical Center for alcohol withdrawal [exhibit reference omitted].

[7] In a vocational rehabilitation report dated May 31, 2008, Roger A. Thrush, Ph.D, C.R.C. found the claimant to be a good candidate for vocational rehabilitation and return to full-time work in a different occupation [exhibit reference omitted].

[8] The claimant did not return to work, having retired in December 2008.  The claimant reported that he does stained glass work in his garage, alternating between sitting and standing <u>throughout the day</u> [exhibit reference omitted; emphasis in original].

[9] On August 22, 2008, Dr. [Schweller's] functional assessment was that of light level work with occasional limitations in bending, stooping, and squatting.  The claimant has no other limitations [exhibit reference omitted].

[10] There is no twelve month period where the claimant's limitations provided disability.

[11] The record shows that the claimant was offered epidural injections in the past, but he refused them [exhibit reference omitted].

[12] On January 26, 2009, Dr. Levine reported that the claimant is not a surgical candidate due to his underlying medical condition related to his alcoholism [exhibit reference omitted].

[13] The claimant does not exhibit any significant disuse muscle atrophy, loss of strength, or difficulty moving that is indicative of severe and disabling pain.

[14] On August 22, 2008, the claimant reported to Dr. [Schweller] that he can walk one-half mile, sit for up to two hours, and he avoids lifting over 30 pounds [exhibit reference omitted].

[15] The claimant does not use any assistive devices to ambulate [exhibit reference omitted].

[16] There is no evidence of loss of weight due to loss of appetite due to pain.

[17] There is no evidence of disuse of cognitive deficits due to pain.

[18] On August 5, 2008, the claimant was down to drinking 10 beers a day from 18 beers a day [exhibit reference omitted].

[19] The record shows that the claimant is not compliant with treatment due to refusal of kyphoplasty or vertebroplasty which would be appropriate for <u>active</u> compression fractures only according to Dr. Kevin Yoo [exhibit reference omitted]. The Regulations state, "in order to get benefits you must follow the prescribed treatment, if you do not follow the prescribed treatment without a good reason, we will not find you disabled" (20 C.F.R. § 404.1530(b)). The claimant can be denied benefits based on this regulation.

[20] The undersigned has taken into consideration the nature, location, onset, duration, frequency, radiation, and intensity of the claimant's pain, as well as precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side effects of any pain medication; other treatment, other than medication, for relief of pain; functional restrictions; and the claimant's daily activities, and finds that his allegations of disabling pain and limitations are out of proportion with the record [exhibit reference omitted].

[21] The claimant's statements regarding his inability to perform work activities are not supported by the medical evidence in the file.

[22] The claimant was able to participate in the administrative hearing and respond to the questioning without any apparent difficulties.

[23] Although the claimant has described daily activities which are fairly limited, two factors weight against considering the allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision. Moreover, the claimant does stained glass work in the garage.

I conclude that subjective allegations of disabling functional limitations are not fully credible. Neither objective medical evidence, nor subjective allegations to the extent they are <u>reasonably</u> credible, warrants any more restrictive functional limitations that those I have found in this case.

(Admin. R. at 18-20.)

The issue of Plaintiff's credibility should, upon remand, be

26

11cv1656

1   reexamined after proper consideration has been given to the medical
2   evidence, including Dr. Levine's opinion, as discussed above.  It is possible
3   that proceedings on remand will render some of the credibility issues moot.
4   Even so, the Court finds it worthwhile to make the following observations
5   about the ALJ's stated reasons for finding Plaintiff not credible:

6          First, as discussed above, the determination that Plaintiff was not a
7   surgical candidate was not based upon a lack of medical need for surgery,
8   but rather Plaintiff's inability to have surgery due to the effect of his
9   alcoholism on his laboratory findings.  Thus, the ALJ's statements that
10  Plaintiff was not a surgical candidate or that he had refused surgery, and
11  the use of these statements by the ALJ as a basis for finding him not
12  credible (see reason nos. 12 and 19), cannot constitute a clear and
13  convincing reason for rejecting Plaintiff's subjective pain and symptom
14  testimony.  Moreover, the ALJ has failed to articulate how the effects of
15  Plaintiff's alcoholism cast doubt on his credibility.  It is unclear to the Court
16  how Plaintiff's visit to the emergency room for alcohol withdrawal (reason
17  no. 6) and his statement that he had decreased his beer consumption from
18  eighteen to ten per day (reason no. 18) bear negatively on his credibility.
19  To the contrary, the record reflects that Plaintiff has consistently been open
20  and honest about his alcohol consumption.  The ALJ needs to provide
21  further explanation in order for any of these reasons to constitute a clear
22  and convincing reason to discount Plaintiff's subjective pain testimony.

23         The ALJ also observed that Plaintiff's working on stained glass in the
24  garage cast doubt on his credibility (see reason nos. 8 and 23).  However,
25  "[o]ne does not need to be 'utterly incapacitated' in order to be disabled."
26  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing Fair v.
27  Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  An ALJ can rely upon Plaintiff's
28  ability to perform daily activities to discredit his allegations of disability only

11cv1656

after making appropriate specific findings.  See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that only if a claimant is able to spend a substantial part of the day engaged in pursuits that involve physical functions that are transferable to a work setting could a specific finding as to this fact be sufficient to discredit an allegation of disability); see also Fair, 885 F.2d at 603.  In this case, the ALJ did not made the requisite specific findings concerning the transferability of Plaintiff's stained glass activity to his ability to perform work.  Without these findings, the Court cannot find that such activities detract from Plaintiff's symptom allegations.

Finally, as previously discussed, Dr. Schweller's opinion does not constitute substantial evidence (see reason no. 9), and the ALJ's statement that "[t]here is no evidence of disuse of cognitive deficits due to pain" (see reason no. 17) is nonsensical; therefore, neither statement can serve as a clear and convincing reason to discount Plaintiff's credibility.

The Court recommends that the ALJ should reconsider Plaintiff's credibility upon remand.

## VIII.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment should be **GRANTED**, Defendant's cross-motion for summary judgment should be **DENIED**, and the case should be remanded for further proceedings.

This report and recommendation will be submitted to the Honorable Thomas J. Whelan, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before **March 1, 2013**.  The document should be captioned "Objections to

11cv1656

Report and Recommendation." Any reply to the Objections shall be served and filed on or before **March 8, 2013**. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 15, 2013

_____
Jan M. Adler
U.S. Magistrate Judge